## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **CHRISTOPHER KNOX,** | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| vs. | ) | **Case No.   12-cv-624-MJR-SCW** |
| | ) | |
| **MARVIN POWERS, CAMILLE ADAMS,** | ) | |
| **CAROLE GEORGE, LAURA QUALLS,** | ) | |
| **RHONNA MEDLIN, JULIE KLEIN,** | ) | |
| **KATHY BUTLER, GRACY HART,** | ) | |
| **DELORES HUMELE, HEATHER** | ) | |
| **MEADS, CLAUDIA LESLIE, MERILY** | ) | |
| **MERTON, LAKESHA BAKER-CAMGY,** | ) | |
| **SHELVY OHREN, KRISTY WATSON, and** | ) | |
| **NIGEL VINYARD** | ) | |
| | ) | |
| *Defendant.* | | |

## REPORT AND RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

### I.   Introduction

This case is before the Court on Plaintiff's Emergency Motion for TRO and/or Preliminary Injunction (Doc. 76).   The matter has been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge Michael J. Reagan pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (c), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a).   It is **RECOMMENDED** that the District Court **ADOPT** the following findings of fact and conclusions of law, and **DENY** the motion for TRO and/or preliminary injunction (Doc. 76).

### II.   Findings of Fact

**A.   Procedural Background**

Plaintiff, acting *pro se*, filed his lawsuit in state court on March 28, 2012 (Doc. 3).   On

May 14, 2012, District Judge Michael J. Reagan issued an Order which conducted a review of Plaintiff's claims, under 28 U.S.C. §1915A and found that Plaintiff had articulated a colorable federal cause of action against each Defendant for deliberate indifference to his serious medical needs (Doc. 17).   The matter was then referred to the undersigned for pre-trial proceedings.   On August 29, 2012, Plaintiff filed his initial Emergency Motion for TRO and Preliminary Injunction (Doc. 24).   The undersigned held an evidentiary hearing and recommended to Judge Reagan that Plaintiff's request for injunction relief be denied.   The undersigned found that the evidence presented suggested Plaintiff did not have a foreign object lodged in his urethra (Doc. 61).   Plaintiff objected to the undersigned's findings, stating that he had been transferred to Pontiac Correctional Center and, since that time, had received proper treatment including an x-ray which identified a foreign object in his urethra (Doc. 69). Plaintiff also stated in his objection that the foreign object had been removed by the medical staff at Pontiac (*Id*).   Judge Reagan, thus, denied as moot Plaintiff's request for preliminary injunction as the object had been removed from his body (Doc. 71).

On April 29, 2013, Plaintiff filed another Emergency Motion for TRO and/or Preliminary Injunction (Docs. 76 & 77).   In this motion, Plaintiff argued that he still had the foreign object in his urethra which he inserted on November 9, 2010 (Doc. 77 at p. 7).   Although Plaintiff had originally stated in his objections that the foreign object was removed upon his transfer to Pontiac, In this motion, Plaintiff states that when he met with the doctor at Pontiac, Dr. Tilden, a x-ray was ordered which revealed a foreign object in his urethra but when Dr. Tilden went to remove the object he did so without Plaintiff's consent or anesthesia and actually caused to object to be pushed further back into Plaintiff's urethra.   Plaintiff maintains that the surgical procedure was unsuccessful in retrieving the foreign object but that he was told by Dr. Tilden that the object was removed.   Plaintiff met against with Dr. Tilden on February 21, 2013 and informed Tilden that he believed to object was

still stuck in urethra.   According to Plaintiff, Tilden offered to perform another procedure to remove the object but Plaintiff declined when he learned the procedure would be performed anesthesia. Plaintiff had another x-ray on March 22, 2013 which, according to Plaintiff, determined that the foreign object was still in his urethra.   Plaintiff seeks a preliminary injunction requiring the medical staff at his current facility, Pontiac, to: take an x-ray of Plaintiff's urethra, send Plaintiff to a licensed urologist and carry out the urologists orders, send the x-rays to an independent radiologist to review the results, provide Plaintiff with pain medication, have the urologist remove the foreign object, and stop the current healthcare provider's from performing surgical procedures on Plaintiff without his consent (Doc. 76).

In response to Plaintiff's motion, Defendants filed Responses (Docs. 80 & 81) arguing that Plaintiff's request for injunctive relief against them was now moot as Plaintiff had been transferred from Tamms Correctional Center to Pontiac Correctional Center.   The Court, however, directed Defendants to provide the name of the medical director of Pontiac Correctional Center, who would be a proper party to add to the case for injunctive purposes (Doc. 86).   Further, the Court directed Defendants to supplement their response by addressing the factual allegation presented in Plaintiff's motion that he had a surgical procedure done at Pontiac and that a foreign object was located.

Defendants supplemented their Responses (Docs. 87 & 88) indicating that Plaintiff had, indeed, undergone a medical procedure at Pontiac in order to remove a foreign object from his body.   The procedure was conducted on January 15, 2013 after Dr. Tilden had previously conducted a physical exam in which he was able to palpate the presence of a foreign object, and an x-ray was ordered (Doc. 87 at ¶8; Ex. B).   The x-ray also revealed a foreign object with a 1cm. metallic body, the tip of an ink pen (Doc. 87 at ¶ 9; Ex. C).   Defendants argued that this characterization of the object

showed that it was not the same object Plaintiff complained about in his Complaint as Plaintiff alleged at the original evidentiary hearing that he had removed the metal tip of the pen before inserting it into his urethra.

Given the factual issues presented, the undersigned scheduled the matter for an evidentiary hearing.   Prior to the hearing, Plaintiff filed a Reply (Doc. 102) to his motion.   Plaintiff indicated that he previously informed the Court the object had been removed because Dr. Tilden had told him that the object was removed, but he now believes that the object was not removed but rather pushed father into his urethra by the procedure performed by Dr. Tilden.   Plaintiff contends that the object is still in his body due to his continuing complaints regarding pain.   Plaintiff also stated that he was incorrect when he testified at the evidentiary hearing that he removed the metal tip from the pen and that he testified as such because he was under the influence of psychotropic drugs prescribed to treat a mental illness.

## B.    Evidentiary Hearing

At the evidentiary hearing, Dr. Andrew Tilden, medical director for Pontiac Correctional Center, testified about his interactions with Plaintiff.   Dr. Tilden first saw Plaintiff on January 9, 2013 at which time Plaintiff informed him that he had a foreign body lodged in his urethra since 2010 (Doc. 87 Ex. B at ¶ 6).   After a physical exam, Dr. Tilden found a palpable foreign body and ordered an x-ray of Plaintiff's genital area which revealed a foreign body including a metallic object which resembled the tip of an ink pen (*Id.* at ¶ 7; Doc. 88 Ex. B; Doc. 87 Ex. C).   The foreign body was removed on January 15, 2013 (Doc. 88 Ex. B; Doc. 87 Ex. B at ¶ 8).   Dr. Tilden testified that after anesthetizing the area with a Lidocaine gel, he was able to easily remove the item from the urethra and described to removal as non-traumatic.   The foreign body turned out to be the insert of an ink pen that had been bent in half.   The item was clear, with no signs of infection (Doc. 87 Ex. B at ¶ 9).

Although Plaintiff had informed Dr. Tilden that the object had been his body since 2010, Dr. Tilden testified that he believed the object had been in Plaintiff's urethra for a short time, months or even days, as it was clean and clear with no sign of adherence or infectious material.   Dr. Tilden also noted that Plaintiff had no signs of infection or any urinary tract issues which might occur if a foreign object was left in the body long term.   It was not consistent with a foreign body that had been in the body for over two years.   Dr. Tilden recalled that Plaintiff was very relieved when Dr. Tilden showed him the pen he removed and was happy that the object had been removed.   Dr. Tilden also showed the removed object to Nurse Schertz who assisted him in the removal.   He put it on a surgical pad and later threw it away.   Dr. Tilden indicated that Plaintiff had consented to the procedure by coming in and asking that the foreign body be removed.   Plaintiff did not provide written consent but consented verbally to the procedure.

Dr. Tilden testified that Plaintiff returned to him on February 24, 2013 indicating that he stuck another ink pen into his urethra five days prior to the visit (Doc. 102 Ex. B).   Dr. Tilden scheduled Plaintiff for another x-ray of his genitals and also referred him to the psychology department to be evaluated as Plaintiff had reinserted the pen in his genitals.   Another x-ray confirmed that there was a metallic foreign body which appeared to be the tip of an ink pen.   While Defendant pointed out that this x-ray report, dated March 22, 2013, indicated that the object appeared "stable since the prior examination" which suggests that it was the same object reviewed in the x-ray taken in January 2013, Dr. Tilden testified that it was not the same object (Doc. 102 Ex. C).   Dr. Tilden stated that the radiologist was not told that the object from January 15, 2013 had been removed and the object in March presented similarly to the object in January because they were both metallic portions of the ink pen which look similar on x-ray.

Dr. Tilden also pointed out that medical records indicated he met with someone else in

the health care unit on February 26, 2013 (Doc. 102 Ex. B).    At that time, Plaintiff refused treatment.

Dr. Tilden again saw Plaintiff on the morning of the hearing, August 1, 2013.    At that time, Dr. Tilden

testified that he offered to remove the foreign body.    Plaintiff refused treatment and also refused to

sign the form indicating he had refused treatment.    Nurse Schertz, who assisted Dr. Tilden that

morning, signed the form at 9:40 a.m. on August 1, 2013, noting that Plaintiff had refused treatment.

Dr. Tilden testified that he believes the item that is currently lodged in Plaintiff's

urethra is not the same foreign object from January, as that item was removed on January 15, 2013.

Although he did not order an x-ray taken after the item was removed, it was clear that he had removed

all of the foreign object and he was hesitant to require more x-rays of Plaintiff's genital area as x-rays

can be carcinogenic after multiple uses.    After the object's removal, however, the object was shown to

both the Plaintiff and three or four witnesses who were in the exam room with Plaintiff.    Dr. Tilden

testified that while he is not a urologist he has trained in the emergency room and can deal with

emergency situations such as the removal of a foreign object.    He is also approved to remove foreign

bodies that are easily removable and do not require surgery.

Plaintiff testified that the doctors are falsifying medical records and lying about what

he says and how he is being treated.    He testified that he has severe pain and swelling and has to have

two guards escort him around due to the pain he has from having a foreign object present in his body

for over two years.

### III.    <u>Conclusions of Law</u>

Plaintiff seeks a Temporary Restraining Order and/or a Preliminary Injunction.

Because both the preliminary injunction and temporary restraining order turns in part on a movant's

likelihood of ultimate success on the merits of his case, both the injunction and restraining order

standards, as well as the standard of the underlying Eighth Amendment claim will guide the Court's

analysis.

A.    **Injunction Standard**

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, **520 U.S. 968, 972 (1997).** *Accord Winter v. Natural Res. Def. Council, Inc.,* **555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right").** To win a preliminary injunction, a plaintiff must show (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm without the injunction, (3) that the harm he would suffer is greater than the harm a preliminary injunction would inflict on defendants, and (4) that the injunction is in the public interest. *Judge v. Quinn*, **612 F.3d 537, 546 (7th Cir. 2010) (citing** *Winter*, **555 U.S. at 20).** The "considerations are interdependent: the greater the likelihood of success on the merits, the less net harm the injunction must prevent in order for preliminary relief to be warranted." *Judge*, **612 F.3d at 546.**

In the context of prisoner litigation, there are further restrictions on courts' remedial power. The scope of the court's authority to enter an injunction in the corrections context is circumscribed by the Prison Litigation Reform Act (PLRA). *Westefer v. Neal*, **682 F.3d 679, 683 (7th Cir. 2012).** Under the PLRA, preliminary injunction relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." **18 U.S.C. §3626(a)(2).** *See also Westefer*, **682 F.3d at 683 (the PLRA "enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: prison officials have broad administrative and discretionary authority over the institutions they manage") (internal quotation marks and citation omitted).**

The Seventh Circuit has described injunctions like the one sought here, where an injunction would require an affirmative act by the defendant, as a mandatory preliminary injunction. *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997). Mandatory injunctions are "cautiously viewed and sparingly issued," since they require the court to command a defendant to take a particular action. *Id.* (citing *Jordan v. Wolke*, 593 F.2d 772, 774 (7th Cir. 1978)). *See also W.A. Mack, Inc. v. Gen. Motors Corp.*, 260 F.2d 886, 890 (7th Cir. 1958) ("A preliminary injunction does not issue which gives to a plaintiff the actual advantage which would be obtained in a final decree.").

B.   **Eighth Amendment Standard**

The Eighth Amendment's ban on cruel and unusual punishment is violated when prisoner officials or medical personnel act with deliberate indifference to a serious medical need. *Cotts v. Osafo*, 692 F.3d 564, 567 (7th Cir. 2012); *Estelle v. Gamble*, 429 U.S. 97 (1976). The standard for deliberate indifference is a high hurdle for a plaintiff: it requires "showing as something approaching a total unconcern for the prisoner's welfare in the face of serious risks." *Rosario v. Brawn*, 670 F.3d 816, 821 (7th Cir. 2012). The Eighth Amendment does not require that prisoners receive unqualified access to health care. *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006). Rather, inmates are entitled only to "adequate medical care." *Boyce v. Moore*, 314 F.3d 884, 888-89 (7th Cir. 2002). A successful deliberate indifference claim is comprised of both an objective and subjective element. *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

First, an inmate must demonstrate that the medical need from which he is suffering is sufficiently serious – whether it has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would perceive the need for a doctor's attention. *Roe*, 631 F.3d at

**857.**  To be serious, a medical condition need not be life-threatening, only a condition that would result in further significant injury or unnecessary and wanton infliction of pain if untreated.  *Id.* **(citing** *Gayton v. McCoy***, 593 F.3d 610, 620 (7th Cir. 2010)).**

Second, an inmate must establish that prison medical professionals acted with a sufficiently culpable state of mind to support § 1983 liability.  *Roe,* **631 F.3d at 857**.  Neither negligence nor inadvertence will support a deliberate indifference claim: "deliberate indifference is not medical malpractice."  *Id.*  But an inmate need not show that defendants actually intended harm to befall him – it is enough to show they knew of a substantial risk of harm to the inmate and disregarded that risk.  *Greeno v. Daley***, 414 F.3d 645, 653 (7th Cir. 2005).**  *See also Board v. Farnham***, 394 F.3d 469, 478 (7th Cir. 2005) (conduct deliberately indifferent when defendant knows of a serious risk of harm and decides not to do anything to prevent that harm from occurring even though he could have easily done so).**  Prison medical professionals are entitled to deference in treatment decisions unless no minimally competent professional would have so responded under the circumstances.  *Sain v. Wood***, 512 F.3d 886, 894-95 (7th Cir. 2008).**  Treatment, therefore, does not preclude a finding of deliberate indifference if it was so blatantly inappropriate as to be divorced from any medical judgment.  *Roe,* **631 F.3d at 857-78**.  And delaying treatment may constitute deliberate indifference if such delay exacerbated the inmate's injury or unnecessarily prolonged the inmate's pain.  *McGowan v. Hulick***, 612 F.3d 636, 640 (7th Cir. 2010).**

**C.     Analysis**

Here, the undersigned **RECOMMENDS** that Plaintiff's motion should be **DENIED** because this is not the same object that is the subject of his Complaint.  Plaintiff states in his motion that the ink pen that he inserted into his urethra in 2010, and which is the subject of his current Complaint, is still present in his body and he requests that it be removed.  However, after

reviewing Plaintiff's medical records and the testimony of Dr. Tilden, which the undersigned found to be both credible and reliable, the undersigned finds that the ink pen currently in his urethra is not the same pen he inserted in 2010, and thus is not related to Plaintiff's current Complaint.   Dr. Tilden testified that on January 15, 2013 he removed a foreign object from Plaintiff's body after x-rays revealed that a metallic 1 cm. foreign body was located in Plaintiff's urethra.   Although Plaintiff complained to Dr. Tilden that the object was the same pen that he inserted in his body in 2010, Dr. Tilden testified that he did not believe that was the case given the condition of the object and the ease with which it was removed.   Dr. Tilden indicated that the pen that was removed was clean and clear, and did not show signs that it had been in the body longer than a few days or months (Doc. 87 Ex. B). Dr. Tilden also noted that it showed no signs of adherence or infection, as he would expect with an object being in the body for two years, and that it was easily removed.   The evidence before the Court suggests that this is not the same object that Plaintiff alleges he placed in his urethra in 2010 and thus this instance of him placing an object in his body is not part of the claims that are currently before the Court.   Rather, this is a new claim, unrelated to his current claim, for which Plaintiff would have to file a new suit on or after fully exhausting his administrative remedies.

Even if the Court found that the foreign object was the object that Plaintiff inserted in 2010, the undersigned finds that Plaintiff's request for relief is now moot as the object has been removed.   Dr. Tilden testified that he removed the object on January 15, 2013.   Medical records also support that the object was removed.   Dr. Tilden recalled removing the object and showing it to both Plaintiff and the nurse and others in the room.   Dr. Tilden remembered Plaintiff being relieved and happy about its removal.   Plaintiff, himself, testified in an earlier filing with the Court that the object was removed by Dr. Tilden on January 15, 2013 (Doc. 69).   Thus, the undersigned finds that even if the object is the same object which is the subject of Plaintiff's Complaint, the object was removed on

January 15, 2013 and thus Plaintiff's request to have it removed is now moot.

Plaintiff, however, now argues that he was incorrect in his earlier filings and that the object was not removed on January 15, 2013.   He points to a radiology report from March 22, 2013 which indicates that a metallic foreign body is present on the x-ray which resembles the tip of a ballpoint pen (Doc. 102 Ex. C).   The report also states that the body "appears stable since the prior examination." (*Id.*).   Plaintiff believes this statement indicates it is the same foreign body that was x-rayed on January 15, 2013 as the radiologist indicated that the object was stable from the last exam.   However, Dr. Tilden explained that this ink pen is a different object the one removed on January 15, 2013.   He pointed to medical records which indicate that on February 24, 2013, Plaintiff presented to the health care unit alleging that he had placed an ink pen in his urethra five (5) days prior and the x-ray in March is of this object (Doc. 102 Ex. B).   Dr. Tilden also pointed out that this cannot be the same ink pen as it had previously been removed on January 15.   Dr. Tilden explained away the statement in the radiology report, indicating that the radiologist was not aware that the prior object had been removed and the objects were both ink pens which would present similarly on an x-ray.   Medical records support Dr. Tilden's conclusion that this is a new object that Plaintiff has inserted into his urethra (Doc. 102 Ex. B; Doc. 88 Ex. B).   Further, the undersigned finds Plaintiff's testimony to the contrary lacks credibility as he previously testified the pen had been removed in January and he is an admitted self-mutilator who has "always self-mutilated [himself] with an segregation flex pen folded into a "v" shape with the tip attached inserted into urethra" (Doc. 102 Ex. A at ¶ 9).

Thus, the evidence before the Court indicates that the object currently present in Plaintiff's urethra is a new ink pen which he has inserted in his body since being transferred to Pontiac Correctional Center.   It is clear to the undersigned that this is not the same object that was removed on January 15, 2013, nor the same object which was inserted in 2010 and is the subject of this lawsuit.

Accordingly, the undersigned **RECOMMENDS** that Plaintiff's request for a preliminary injunction be **DENIED** as the object Plaintiff requests be removed is a new object that he has recently inserted into his body and thus any allegations that correctional staff are deliberately indifferent in not removing it[1] is separate and unrelated to Plaintiff's claim of deliberate indifference in failing to remove a foreign body inserted into his urethra in 2010.   If Plaintiff wishes to pursue his claim against Dr. Tilden and others for any failure to move this new object, Plaintiff would need to file a new Complaint after fully exhausting his administrative remedies.   *George v. Smith*, 507 F.3d 605 (7th Cir. 2007).

### IV.   Conclusion

Accordingly, it is **RECOMMEND** that the Court **FIND** that Plaintiff is not entitled to a preliminary injunction and **DENY** his Emergency Motion for TRO and/or Preliminary Injunction (Doc. 76).

Pursuant to **28 U.S.C. § 636(b)(1)** and **Local Rule 73.1(b),** the parties may object to any or all of the proposed dispositive findings in this Recommendation.   The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals.   *See, e.g., Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004).   Accordingly, Objections to this Report and Recommendation must be filed on or before **August 29, 2013**.

        **IT IS SO ORDERED**.        DATED: August 12, 2013.

                                        */s/ Stephen C. Williams*
                                        STEPHEN C. WILLIAMS
                                        United States Magistrate Judge

---

[1] The undersigned notes that while Plaintiff argues that Dr. Tilden and other medical staff are deliberately indifferent in not removing the pen from his urethra, the medical records indicate that on two occasions, Plaintiff met with the health care unit and staff planned on removing the object, but Plaintiff refused treatment.   Dr. Tilden testified that he met with Plaintiff the morning of the hearing to discuss removal but Plaintiff refused, as well as refused to sign a consent form declining treatment. Plaintiff acknowledged that he refused treatment from Dr. Tilden and requests to be seen by an outside urologist.