IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CHRISTOPHER KNOX,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 12-cv-624-SCW |
| | ) |
| **MARVIN POWERS and ANDREW TILDEN,** | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

**WILLIAMS, Magistrate Judge:**

**INTRODUCTION**

Plaintiff, a prisoner at Pontiac Correctional Center, brought this complaint pursuant to 42 U.S.C. § 1983 for deliberate indifference to his serious medical condition. Plaintiff alleges that he self-mutilated himself in November 2010, while housed at Tamms Correctional Center, by inserting a foreign object, an ink cartridge from a ball point pen, into his urethra. After ruling on a summary judgment motion filed by the various defendants in the case, the only claim which remained for trial was Plaintiff's deliberate indifference claim against Defendant Marvin Powers, who treated Plaintiff after he inserted the foreign object at Tamms in 2010 (Doc. 182). Also remaining in the case for trial was a claim for injunctive relief to have the foreign object removed from his urethra (*Id.*). To the extent Plaintiff sought injunctive relief, the Court added Dr. Andrew Tilden in his official capacity for purposes of implementing any injunctive relief awarded to Plaintiff.

This case was referred to the undersigned on September 8, 2014. At the request of the

Defendants, and with the consent of Plaintiff, this Court severed Plaintiff's damages claim and claim for injunctive relief pursuant to **Federal Rule of Civil Procedure 42(b)**. The Court held a bench trial on Plaintiff's request for permanent injunction on June 19, 2015. The Court heard testimony from Plaintiff Christopher Knox and Dr. Andrew Tilden. Before reviewing its findings of fact, the Court will articulate the relevant standards that will guide its conclusions of law.

## LEGAL STANDARDS

### A. Standard for Permanent Injunction

For permanent injunction to issue, the plaintiff must show: (1) success, as opposed to a likelihood of success, on the merits; (2) irreparable harm; (3) the benefits of granting the injunction outweigh the injury to the defendant; and (4) that the public interest will not be harmed by the relief requested. *ADT Sec. Servs., Inc. v. Lisle-Woodridge Fire Prot. Dist.*, **672 F.3d 492, 498 (7th Cir. 2012).**

In the context of prisoner litigation, there are further restrictions on the court's remedial power. The scope of the court's authority to enter an injunction in the corrections context is circumscribed by the Prison Litigation Reform Act (PLRA). *Westefer v. Neal*, **682 F.3d 679, 683 (7th Cir. 2012).** Under the PLRA, prospective injunctive relief "shall extend no further than necessary to correct the violation," and courts may not grant injunctive relief unless "it finds such relief is narrowly drawn, extends no further than necessary to correct the violation," and is "the least intrusive means to do so." **18 U.S.C. § 3626(a)(1)(A).** Injunctive relief is only available when there is an ongoing or threated violation of federal law. *Vickery v. Jones*, **100 F.3d 1334, 1346 (7th Cir. 1996).** Absent such a continuing violation, injunctive relief is improper. *Kress v. CCA of Tenn., LLC,* **694 F.3d 890, 894 (7th Cir. 2012) (citing** *Green v. Mansour,* **474 U.S. 64, 73 (1985)).**

B. **Eighth Amendment Deliberate Indifference**

The Supreme Court has det n clared that a prison official's "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). In order to prevail on such a claim, a plaintiff must first show that his condition was "objectively, sufficiently serious" and that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005) (citations and quotation marks omitted).

The second prong of the deliberate indifference analysis requires that a prisoner show that prison officials acted with a sufficiently culpable state of mind, namely, deliberate indifference. "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'" *Estelle*, 429 U.S. at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985). Negligence, gross negligence, or even "recklessness" as that term is used in tort cases, is not enough. *Id.* at 653; *Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir. 1987).

Put another way, the plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference. *Greeno,* 414 F.3d at 653. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence,... and a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer v. Brennan*,

**511 U.S. 825, 842 (1994) (citations omitted).** An inmate does not have to prove that his complaints of pain were "literally ignored," but only that "the defendants' responses to it were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes v. Snyder*, **546 F.3d 516, 524 (7th Cir. 2008) (quoting** *Sherrod v. Lingle*, **223 F.3d 605, 611 (7th Cir. 2000)).**

The Seventh Circuit has noted that the standard is "a high hurdle..because it requires a 'showing as something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Roasrio v. Brawn*, **670 F.3d 821-22 (7th Cir. 2012) (***Collins v. Seeman*, **462 F.3d 757, 762 (7th Cir. 2006)).** "Even if the defendant recognizes the substantial risk, he is free from liability if he 'responded reasonably to the risk, even if the harm ultimately was not averted.'" *Gayton v. McCoy*, **593 F.3d 610, 620 (7th Cir. 2010) (quoting** *Farmer*, **511 U.S. at 843).**

### FINDINGS OF FACT

The following pertinent facts were elicited at trial:

- Plaintiff Christopher Knox, while housed at Tamms Correctional Center, self-mutilated himself in November 2010 by sticking the cartridge of an ink pen in his penis and into his urethra.

- Plaintiff was transferred to Pontiac Correctional Center in December 2012 and put in for a sick call request in January 2013.

- Plaintiff saw Dr. Tilden on January 15, 2013 for the purpose of removing a foreign object from Plaintiff's urethra.

- Although Plaintiff testified that Tilden only attempted to remove the foreign object and instead pushed the object farther into his urethra (See also Defendant's Exhibit #1, p. 8), Plaintiff originally submitted documentation to the Court shortly after the January 15, 2013 exam indicating that the foreign object was removed from Plaintiff's urethra (Defendant's Exhibit #2, p. 5).

- Plaintiff filed an objection to a pending Report and Recommendation with this Court on January 17, 2013 (Doc. 69; Defendant's Exhibit #2), indicating that Plaintiff received proper treatment at Pontiac Correctional Center. Plaintiff stated that he received x-rays revealing a

foreign object in his urethra and that the foreign object was removed by the doctor at Pontiac (Defendant's Exhibit #2, p. 5).

- Plaintiff testified at the bench trial, however, that Tilden did not remove the foreign object on January 15, 2013, but instead pushed the foreign object farther back into his urethra. Plaintiff also testified that Tilden tried to remove the object on February and March 2013 and again pushed the object further into his urethra. However, Plaintiff previously stated in his emergency motion for temporary restraining order and preliminary injunction filed April 29, 2013 (Doc. 77; Defendant's Exhibit #1) that he saw Dr. Tilden on February 26, 2013 and March 22, 2013 and Plaintiff refused to allow Tilden to perform the procedure to remove the foreign object (Doc. 77, pp. 9-10). Plaintiff testified that he wrote the document with the help of other inmates and he signed the accompanying affidavit indicating that everything stated in the affidavit and the motion was true (Defendant's Exhibit #1, pp. 15-16).

- Plaintiff testified that he continues to suffer from having a ink cartridge lodged in his urethra which has been present since November 2010.

- Dr. Tilden testified that he saw Plaintiff on March 29, 2015 after Plaintiff was on a hunger strike for three days (Defendant's Exhibit #3, p. IDOC1112). At that time, Plaintiff informed Tilden that he had a foreign object in his urethra and asked for the object to be removed.

- Tilden ordered an x-ray to determine if a foreign body was present in Plaintiff's urethra. An x-ray was performed on April 7, 2015 (Defendant's Exhibit #3, p. IDOC1036). A "small linear metallic density" was located in Plaintiff's penile shaft (*Id.*).

- Tilden again saw Plaintiff on April 9, 2015. Tilden was unable to palpitate a foreign object in Plaintiff's penis and had not received the April 7, 2015 x-rays at the time of the exam (Defendant's Exhibit #3, p. IDOC1114). Tilden testified that he believes he would have been able to palpitate the object if it is was in Plaintiff's urethra due to the tissue of the penis being thin at that location. Tilden also noted the length and rigidity of the ink cartridge would have made the object easily palpable.

- Tilden next saw Plaintiff on April 14, 2015 in urgent. Tilden noted that the x-ray from April 7, 2015 showed a metallic pen tip in Plaintiff's urethra but Tilden was unable to palpitate an object during a physical exam (Defendant's Exhibit #3, p. IDOC 1116-17). The penis was soft, there was no tenderness, and Plaintiff did not have pain during the examination.

- Tilden ordered another x-ray to document that there was no foreign object present in Plaintiff's urethra.

- On the way to the x-ray, Plaintiff requested to use the restroom. While in the restroom, Tilden noted that Plaintiff began making "loud, painful" noises and that after five minutes Plaintiff returned from the restroom and he appeared upset. Plaintiff requested that Tilden re-examine Plaintiff before the x-ray (Id. at p. IDOC 1116).

- Tilden again palpitated Plaintiff's penis and this time felt a rigid, foreign body (Defendant's Exhibit #3, p. IDOC 1116-17). Plaintiff was very agitated and complained of pain during the examination.

- Based on Plaintiff's actions in the restroom and the fact that an object was now present when one had not been palpitated a few minutes prior, Tilden believed that Plaintiff had re-inserted the foreign object in his penis while in the restroom.

- Tilden ordered an x-ray and offered to remove the object, but Plaintiff refused and left the healthcare unit very agitated (*Id.* at p. IDOC117).

- Tilden had not seen Plaintiff since April 14, 2015. Tilden testified that if there is an object present in Plaintiff's penis, that he is willing to remove the object.

- Tilden testified that he has previously removed a foreign object from Plaintiff's penis when Plaintiff first transferred to Pontiac Correctional Center and the object was easily removed by hand without the use of instruments due to its location near the tip of the penis. If the object is in a similar location, it can be removed without instruments or anesthesia. If it is located deeper in the urethra, it can be removed with forceps and lidocaine.

## CONCLUSIONS

### A. Permanent Injunction

Based on the testimony and documentary evidence in this case, the Court concludes that Plaintiff has no ongoing serious medical need which requires equitable relief. Injunctive relief is only proper if there is an ongoing violation of federal law. *Kress v. CCA of Tennessee, LLC*, **694 F.3d 890, 894 (7th Cir. 2012) (citing** *Al-Alamin v. Gramley*, **926 F.2d 680, 685 (7th Cir. 1991)).** Based on the evidence before the Court there is no ongoing serious medical need which Plaintiff suffers from.

The evidence before the Court indicates that Plaintiff has not had a foreign object in his urethra since 2010, as Plaintiff testified. Rather, the evidence indicates that Plaintiff has had a foreign object removed in the past, but that Plaintiff has reinserted and continues to remove and reinsert ink cartridges into his urethra by his own hand. Tilden testified that he previously removed an ink

cartridge from Plaintiff's urethra and that it was removed easily without the use of instruments. Plaintiff initially stated in a prior motion that the ink cartridge had been removed on January 15, 2014, although he later changed his testimony. However, Tilden saw Plaintiff on March 29, 2015 and Plaintiff again complained that he had a foreign object in his urethra. Dr. Tilden ordered an x-ray of Plaintiff's genitals. An x-ray taken on April 7, 2015 revealed a foreign body, a metallic ink cartridge, in Plaintiff's urethra, similar to the one previously removed by Tilden. Yet when Tilden examined Plaintiff on April 9, 2015 and again on April 14, 2015, no object was palpable.

The medical records and Tilden's testimony indicate that on April 14, 2015, as Tilden escorted Plaintiff to another x-ray to confirm that no object was present in Plaintiff's urethra, Plaintiff went to the restroom and reinserted the object into his penis. This fact is supported by Tilden's testimony that he heard loud, painful noises while Plaintiff was in the restroom, that Plaintiff appeared upset and asked to be reexamined upon exiting the restroom, and that upon reexamining Plaintiff, by palpitating Plaintiff's genitals in the exact same manner as Tilden had done prior to Plaintiff entering the restroom, Tilden this time palpitated a rigid-foreign object. This testimony from Tilden, supported by the medical record, indicates that the ink cartridge was not in Plaintiff's urethra at the time of the first palpitation on April 14, 2015, but rather was reinserted by Plaintiff after visiting the restroom.

The evidence also suggests that the object was removed after the x-ray taken on April 7, 2015 as Tilden failed to palpate an object in Plaintiff's urethra on April 9, 2015. If the object had been present on April 9, 2015 and in Tilden's initial exam on April 14, 2015, Tilden testified that it would have been palpable due to the thinness of the skin on the penis, the rigidity of the ink cartridge, and the position of the object as established by the x-ray. Tilden's testimony is also supported by the fact that he was able to easily palpate the foreign object once it was reinserted by Plaintiff on April 14, 2015. Thus, it is clear to this Court that Plaintiff is not suffering from a continuing serious medical need as

the ink cartridge has not been in Plaintiff's urethra continuously since 2010t.  Rather, the object has been removed by doctors on at least one occasion, by Tilden in January 2013, and Plaintiff has since reinserted the object and continues to remove and reinsert the object as is suggested by the series of events which are documented in the record from March to April 2015.

That Plaintiff testifies otherwise does not affect this Court's findings as the Court finds Plaintiff's testimony to lack credibility.  In fact, it is clear to this Court that Plaintiff has lied to the Court both in his filings and in his testimony to the Court at the bench trial.  Plaintiff originally filed documents with this Court indicating that an ink cartridge was removed from his urethra on January 15, 2013.  Plaintiff then changed his testimony and stated in a motion submitted in April 2013 that the cartridge was not removed in January but rather pushed farther back into his urethra by Tilden's efforts to remove the item with a surgical tool (Defendant's Exhibit #1, p. 8).  In that filing, Plaintiff also stated that Tilden sought to remove the object again on February 26, 2013 and March 22, 2013, but that Plaintiff refused the procedure (Defendant's Exhibit #1, p. 9; see also Report and Recommendation recommending denial of preliminary injunction, Doc. 107 at p. 10).  However, at the bench trial, Plaintiff testified for the first time that Tilden did in fact perform procedures in February and March of 2013 to remove the foreign object but that each time Tilden pushed the object farther back into Plaintiff's urethra.  Plaintiff's ever changing story is clearly inconsistent with prior versions that Plaintiff has presented to the Court.  Further, there is no evidence that the current foreign object in Plaintiff's urethra, if there currently is a foreign object there, is the same foreign object from 2010 as Plaintiff testified.  Plaintiff's testimony is not credible.

Not only is Plaintiff not suffering from a continuous serious medical need, but the Court finds that Defendant Tilden has not been deliberately indifferent to that need.  The evidence before the Court indicates that Tilden has already removed the foreign object from Plaintiff's urethra once on

January 15, 2013. Further, Tilden offered to remove the subsequent foreign body located by x-ray on April 7, 2015 but Plaintiff refused treatment on April 14, 2015. While Tilden has not seen Plaintiff since his encounter with him on April 14, 2015, Tilden testified that he is willing to remove the object from Plaintiff's urethra should Plaintiff consent to the procedure. Tilden testified that the procedure would require Tilden to either remove the object by simple manipulation of Plaintiff's genitals by hand or by the use of forceps, in which case Tilden would use lidocaine to numb Plaintiff's urethra so that removal would cause minimal pain. The Court finds no evidence in the record to suggest that Tilden is not qualified to perform the procedure, nor is there evidence to suggest that the procedure would cause Plaintiff additional harm as Tilden has previously removed the object with little effort and with no pain to Plaintiff. As the Court has previously stated, Plaintiff's testimony to the contrary, that Tilden only pushed the object further into Plaintiff's urethra causing him additional pain, is not credible.

Thus, the Court finds that Plaintiff is not entitled to injunctive relief because he is not suffering from an ongoing, continuous serious medical need. Nor has Dr. Tilden been deliberately indifferent to any potential serious medical need as he has previously removed the foreign object from Plaintiff's urethra and is ready and willing to remove any subsequent objects that Plaintiff has inserted into his penis. Accordingly, the Court finds for Defendants on Plaintiff's claim for injunctive relief. No injunction shall issue. As Dr. Tilden was only added to this case in his official capacity for purposes of injunctive relief, the Court **ORDERS** that judgment be entered in favor of Dr. Tilden at the close of this case.

### B. Sanctions

In reaching its conclusion that Plaintiff is not suffering from an ongoing, continuous serious medical need, the Court has discovered that Plaintiff has repeatedly lied to the Court about his medical

condition. Plaintiff initially informed the Court that the ink cartridge was removed on January 15, 2013 (Defendant's Exhibit #2) but later changed his testimony to indicate that the object had not been removed (Defendant's Exhibit #1). He stated in a court filing that Tilden sought to remove the ink cartridge again in February and March of 2013 which Plaintiff refused treatment (Defendant's Exhibit #1, p. 9), but testified at the bench trial that Tilden did perform the procedure, pushing the object farther into Plaintiff's urethra. He also testified that the same ink cartridge has been in his urethra since 2010 when that fact is belied by the medical testimony. Thus, the evidence indicates that Plaintiff has lied on numerous occasions to this Court. The Court does not "tolerate deception from litigants." *Neal v. LaRiva*, **765 F.3d 788, 790 (7th Cir. 2014).** Further, the Seventh Circuit has indicated that dismissal is a proper sanction for lying to the Court. *Rivera v. Drake*, **767 F.3d 685, 686-87 (7th Cir. 2014) (citing** *Haskins v. Dart*, **633 F.3d 541, 544 (7th Cir. 2011);** *Ridge Chrysler Jeep, LLC v. DaimlerChrysler Financial Services Americas LLC*, **516 F.3d 623, 626-27 (7th Cir. 2008);** *Greviskes v. Universities Research Association, Inc.*, **417 F.3d 752, 759 (7th Cir. 2005);** *Thomas v. General Motors Acceptance Corp.*, **288 F.3d 305, 308 (7th Cir. 2002)).** Thus, the Court is inclined to dismiss the remainder of Plaintiff's suit, his claim for damages against Dr. Marvin Powers, as a sanction for his repeated lies. As such, the Court **ORDERS** Plaintiff to show cause as to why his claims should not be dismissed as a sanction for his lies to the Court. Plaintiff shall have fourteen days to respond to the show cause order and failure to respond will result in a dismissal of Plaintiff's remaining claims with prejudice.

## CONCLUSION

Accordingly, the Court **FINDS** that Plaintiff is not entitled to injunctive relief for his deliberate indifference claims and awards judgment in favor of Dr. Tilden as to that claim. As to the remainder of Plaintiff's complaint, the deliberate indifference claim for damages against Dr. Marvin

Powers, the Court **DIRECTS** Plaintiff to **SHOW CAUSE** why his complaint shall not be dismissed with prejudice as a sanction for lying to this Court on repeated occasions.  Plaintiff shall have up to and including **July 10, 2015** to respond to the show cause order.

       **IT IS SO ORDERED**.      DATED: June 26, 2015

                                            */s/ Stephen C. Williams*
                                            STEPHEN C. WILLIAMS
                                            United States Magistrate Judge